## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| DAVID RAMIREZ, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>FLORIDA HEALTH SCIENCES CENTER, INC., d/b/a TAMPA GENERAL HOSPITAL<br><br>       Defendant. | Case No.:<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Filed concurrently with Civil Cover Sheet]<br><br>Action Filed:     July 27, 2023<br>Complaint Served:  August 1, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital ("Defendant" or "TGH"), hereby removes the action filed by Plaintiff David Ramirez ("Plaintiff"), individually and on behalf of all others similarly situated, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014150, to the United States District Court for the Middle District of Florida. In support of removal, TGH states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.      On July 27, 2023, Plaintiff, individually and, purportedly, on behalf of all others similarly situated, filed a Class Action Complaint (the "Complaint") against TGH in Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014150 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action.

4.      On August 1, 2023, Plaintiff served TGH with copies of the Summons and Complaint via process server.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by TGH are attached hereto as exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) the docket in the

State Court Action (**Exhibit B**); and (3) service documents (i.e., summons and proof of service) (**Exhibit C**).

5.      No other pleadings or documents (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

6.      This removal is timely because TGH filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## **CAFA JURISDICTION**

7.      Basis of Original Jurisdiction.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).

8.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), TGH may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

## THE ACTION IS PLED AS A CLASS ACTION

9.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure ***or similar State statute*** or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added); *Lowery*, 483 F.3d at 1199 n. 35.

10.      Plaintiff brings this action as a "class action" and seeks class certification of a Nationwide Class and Florida Class pursuant to Florida Rule of Civil Procedure 1.220. [Compl., ¶ 162.] Because Florida's class Action rule, Florida Rule of Civil Procedure 1.220, "is not only 'similar' to, but is based on, Rule 23," *Coquina Crossing Homeowners Assoc., Inc. v. MHC Operating Ltd. P'ship*, Case

No. 3:21-cv-84-MMH-LLL, 2022 WL 843582, at *7 (M.D. Fla. Mar. 22, 2022), the first CAFA element is satisfied.

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiff alleges that, "on or around May 31, 2023, TGH detected unusual activity on its computer systems" and determined that "an unauthorized third party accessed TGH's network and obtained certain files from its systems between May 12 and May 30, 2023," (the "Data Incident"), which resulted in the alleged compromise of Personal Information[1] of approximately 1.2 million individuals, including Plaintiff. [Compl., ¶¶ 3–6.] Plaintiff further alleges that the Data Incident occurred as a result of TGH's alleged "failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Personal Information from the foreseeable threat of a cyberattack." [*Id.* at ¶ 9.]

12.     Based on these allegations, Plaintiff asserts seven causes of action against TGH: (1) negligence, (2) negligence *per se*, (3) breach of fiduciary duty; (4) unjust enrichment; (5) breach of implied contract; (6) declaratory and injunctive relief; and (7) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* [*See generally,* Compl.]

---

[1] Plaintiff defines "Personal Information" as "names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH For its business operations." [Compl., ¶ 4.]

13.     Furthermore, Plaintiff purports to bring these seven causes of action on behalf of himself and a Nationwide Class or, in the alternative, a Florida Class [*Id.* at ¶¶ 162–3.]  Plaintiff defines the Nationwide Class as: "All persons residing in the United States whose Personal Information was compromised in the Data [Incident] disclosed to TGH on or about July 20, 2023, including all who were sent notice of the Data [Incident]," and the Florida Class as "All persons residing in the state of Florida whose Personal Information was compromised in the Data [Incident] disclosed by TGH on or about July 20, 2023, including al who were sent notice of the Data [Incident]."  [*Id.*]

14.     Further, Plaintiff alleges that approximately 1.2 million people were impacted in the Data Incident.  [*Id.* at ¶ 50; *see also id.* at ¶ 166 ("The members in the class are so numerous that joinder of all class members in a single proceeding would be impracticable . . . TGH reported that approximately 1.2 million individuals' information was exposed in the Data [Incident].").]

15.     To date, TGH has mailed notification to approximately 1,314,425 people, the vast majority of whom reside in the United States.

16.     Based on the above, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

17.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla. Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member [i]s a citizen of a state other than [that of defendant] at the time of removal").

18.    Defendant's Citizenship.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  *See also RVRoof.com, Inc. v. Ariz. RV Specialist, LLC*, Case No. 3:19-cv-674-J-34MCR, 2019 WL 2452824, at *2 (M.D. Fla. June 12, 2019) (quoting 28 U.S.C. § 1332(c)(1)). "A corporation's principal place of business is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center."  *Cohen v. Burlington*, No. 22-13222, 2023 WL 4364499, at *3 n. 2 (11th Cir. July 6, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)); *see also Tavares v. Pelican Int'l, Inc.*, Case No. 3:22-cv-554-MMH-MCR, 2022 WL 1619172, at *2 (M.D. Fla. May 23, 2022).  "In practice, this normally is 'the place where the corporation maintains its headquarters[.]'"  *Tavares*,

2022 WL 1619172, at *2 (quoting *Hertz*, 559 U.S. at 93); *see id.* ("A corporation's headquarters is normally . . . its principal place of business.").

19.     As alleged in the Complaint, TGH is a private corporation with headquarters in Florida.   [Compl., ¶ 18 (stating that TGH is a "Florida-based healthcare provider with its principal place of business . . . located at One Tampa General Circle, Tampa, Florida 33606.").]  Accordingly, pursuant to *Hertz*'s nerve center test, TGH has its principal place of business, *i.e.*, its headquarters, in Florida. Specifically, TGH's headquarters are located at 1 Tampa General Circle, Tampa, Florida 33606.[2]  Further, TGH is organized under the laws of Florida.  Accordingly TGH is a citizen of Florida for purposes of CAFA.

20.     <u>Plaintiff's and the Putative Class's Citizenship</u>.   For diversity purposes, an individual is a "citizen" of the state in which he or she is domiciled. *Arnold v. Leavy Bros. Moving & Storage, Inc.*, Case No. 3:22-cv-427-BJD-JBT, 2023 WL 2347488, at *1 (M.D. Fla. Mar. 3, 2023) (citing *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'"  *Smith*, 991 F.3d at 1149 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)).

---

[2] *See* Hospital Contact Information, https://www.tgh.org/about-tgh/contact-us (last visited August 13, 2023).

Said differently, "domicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state." *Id.* "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*

21.     Here, Plaintiff alleges in the Complaint that he "is a citizen of Florida and resides in Tampa, Florida." [Compl., ¶ 22.]  Accordingly, absent other evidence to the contrary, Plaintiff is a citizen of Florida for CAFA purposes. However, even assuming Plaintiff is a citizen of Florida for purposes of CAFA, the putative Nationwide Class he seeks to represent is much broader and more expansive geographically.  For example, Defendant sent notifications of the Data Incident to people with addresses in all 50 states and the District of Columbia.  And, of course, while "residency does not equate to citizenship," *Smith*, 991 F.3d at 1149 (citing *Travaglio*, 735 F.3d at 1269), in this case, where only one putative class member must reside and intend to remain in a state other than Florida, it is more likely than not that at least one of the approximately 1,314,425 putative class members is a non-Florida citizen.

22.     Accordingly, as established above, "minimal diversity" of citizenship exists pursuant to CAFA because TGH is a citizen of the State of Florida,

and it is more likely than not that at least one of the approximately 1,314,425 putative class members is a citizen of a state other than Florida.

23.     Furthermore, Plaintiff cannot meet his burden to show, let alone demonstrate, that CAFA's "home state" or "local controversy exception" applies. *See Alvarez v. Loancar*e *LLC*, Case No. 20-21837-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (citing *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017)).

24.     Under the "home state" exception to CAFA, "a district court must 'decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Day*, 2020 WL 5758003, at *5 (citation omitted).   Similarly, the "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).   "Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-thirds of the proposed plaintiff classes, and the action was originally filed in that same state." *Alvarez*, 2021 WL 184547, at *6.

25.     With over 1,314,425 putative class members with addresses in all 50 states, there simply is no way to know who a citizen of any state is without speaking directly to each of those 1,314,425 individuals.  *See Smith*, 991 F.3d at 1157 (holding that, to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient.  What is in another man's mind must be determined by what he does as well as by what he says").  This is especially true here, where "citizens of other states may live part of the year in Florida . . . , but maintain a permanent residence elsewhere."  *Id* at 1158.  Further exacerbating this problem is the nature of the putative class here, many of whom may have visited TGH only for a one-off hospital visit while visiting or temporarily residing in Florida.

26.     In short, because at least one putative class member is likely a citizen of a state other than Florida, "minimal diversity" is established pursuant to CAFA, and no evidence exists to suggest any of the exceptions to CAFA apply.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[3]

27.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C.A. § 1446(c)(2)(B); *Penton v. Centennial Bank*, Case No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *3 (N.D. Fla. July 30, 2021) (citing *Fed. Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).  "The goal is to determine 'what the controversy is in the case, not how much plaintiffs are ultimately likely to recover as a result of the lawsuit.'"  *Penton*, 2021 WL 8014675, at *3 (quoting *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020)).  "Accordingly, dismissal is appropriate only if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"  *Id.* (quoting *McKinnon Motors, LLC*, 329 F.3d at 807).  Furthermore, in determining the amount

---

[3] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

in controversy, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000, *Topalli v. PetSmart, LLC,* Case No.: 6:22-cv-1670-WWB-EJK, 2023 WL 2928301, at *1 (M.D. Fla. Apr. 13, 2023) (citation omitted), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted).

28.     Here, Plaintiff seeks damages, including, but not limited to, attorneys' fees; actual, statutory, and punitive damages; pre- and post-judgment interest on all amounts awarded; and "equitable, injunctive, [and] declaratory relief," including "injunctive relief designed to prevent TGH from experiencing another data breach by adopting and implementing best data security practices to safeguard Personal Information."  [Compl., Prayer for Relief.]

29.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

30.     <u>Negligence and Negligence *Per Se* Claims.</u>  As stated above, Plaintiff brings claims for negligence and negligence *per se*.  [Compl., ¶¶ 172–79 (negligence); 180–90 (negligence *per se*).]

31.     Plaintiff alleges that TGH "knew, or should have known, the risks of collecting and storing Plaintiff's and all other class members' Personal

Information and the importance of maintaining secure systems."  [*Id.* at ¶ 174.]

Plaintiff also argues that TGH "owed a duty to Plaintiff and all other class members

to exercise reasonable care in safeguarding and protecting their PII/PHI in its

possession, custody, or control."  [*Id.* at ¶ 173.]  Plaintiff further alleges that TGH

had duties arising under statute, including, *inter alia*, the "HIPAA Privacy and

Security Rules" (*i.e.*, the "HIPAA Privacy Rule," 45 C.F.R. Part 160 and Part 164,

Subparts A and E and the "HIPAA Security Rule," 45 C.F.R. Part 160 and Part 164,

Subparts A and C), [*id.* at ¶ 181]; Section 5 of the Federal Trade Commission Act

("FTC Act"), 15 U.S.C. § 45, [*id.* at ¶ 182]; and the Health Insurance Portability and

Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302(d) *et seq.*, [*id.* at ¶ 183].

32.     Plaintiff further alleges that TGH breached these and other duties,

and therefore was negligent, by "failing to exercise reasonable care in safeguarding

and protecting Plaintiff's and class members' Personal Information."  [*Id.* at ¶ 176.]

33.     Plaintiff also asserts that TGH violated the HIPAA Privacy and

Security Rules and Section 5 of the FTC Act "by failing to use reasonable measures

to protect Plaintiff's and all other class members' Personal Information and not

complying with applicable industry standards," and that such alleged violations

constitute negligence *per se*.  [*Id.* at ¶¶ 185–86.]

34.     Plaintiff's Complaint contains no allegations that would support or

suggest the amount in damages he or any of the putative class members allegedly

sustained as a consequence of TGH's negligence or negligence *per se*.  However, because Plaintiff seeks recovery in the form of injunctive relief requiring TGH "to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft," [*id.* at Prayer for Relief(C)], one option for assigning a value to these damages is through the cost of credit monitoring.

35.     Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month.  For example, LifeLock offers a product, called Norton360 with LifeLock Advantage, which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $15.99 per month if paid annually.[4]  Similarly, both Equifax[5] and Experian[6] offer products that

---

[4] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[5] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[6]*See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited on August 15, 2023).

provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.  Multiplying just the cost of providing <u>one month</u> of credit-monitoring services at $15.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $32,017,655.80 (calculated as: 1,314,425 individuals notified, times 1 month, times $15.99 per month).

36.     Accordingly, Plaintiff's and the putative class members' potential credit monitoring damages alone far exceed the $5,000,000 CAFA amount-in-controversy jurisdictional amount.   Combined with Plaintiff's other alleged negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

37.     <u>Breach of Fiduciary Duty Claim</u>.  Plaintiff also claims that TGH and class members, including Plaintiff, had a "fiduciary relationship" which required TGH to "act primarily for the benefit of its patients and other individuals who are otherwise affiliated or transacted with TGH, which includes safeguarding and protecting Plaintiff's and class members' Personal Information." [Compl., ¶¶ 191–94.]

38.     Plaintiff claims that TGH breached its fiduciary duty to Plaintiff and the class "by failing to properly protect the integrity of the system containing Plaintiff's and class members' Personal Information, failing to comply with data

security guidelines set forth by HIPAA, and otherwise failing to safeguard the Personal Information of Plaintiff and class members it collected."  [*Id.* at ¶ 193.]  As a result, Plaintiff claims that he and class members have suffered or will suffer injury, including, but not limited to:

> a substantial increase the likelihood of identity theft; (ii) the compromise, publication, and theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data [Incident]; (v) the continued risk to their Personal Information which remains in TGH's possession (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the Personal Information compromised as a result of the Data [Incident]; and (vii) actual or attempted fraud.

[*Id.* at ¶ 194.]

39.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which he or any of member of the Class are allegedly entitled for Defendant's alleged breach of fiduciary duty.  Therefore, Defendant does not include any specific "breach of fiduciary duty" damages in the calculation of the total amount in controversy.  But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $32,017,655.80.  Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring

for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

40.     <u>Breach of Implied Contract Claim</u>.  Plaintiff also asserts that TGH breached an implied contract with Plaintiff and putative class members.  [*See* Compl., ¶¶ 201–06.]

41.     Specifically, Plaintiff claims that TGH "required Plaintiff and class members to provide, or authorize the transfer of, their Personal Information in order for TGH to provide services."  [*Id.* at ¶ 202.]  "In exchange, Defendant entered into implied contracts with Plaintiff and class members in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiff's and class members' Personal Information and to timely notify them in the event of a data breach."  [*Id.*]  Plaintiff further claims that TGH "breached the implied contracts by failing to provide them with timely and accurate notice of the Data [Incident]."  [*Id.* at ¶ 205.]

42.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which he or any of member of the Class are allegedly entitled for Defendant's alleged breach of contract.  Therefore, TGH does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy.  But, again, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a

minimum, $32,017,655.80.  Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

43.      Claim for Violation of the Florida Deceptive and Unfair Trade Practice Act.  Plaintiff claims that TGH has violated the FDUTPA, Fla. Stat. § 501.201 *et seq*.  [Compl., ¶¶ 214–24.]

44.      Specifically, Plaintiff claims that TGH violated the FDUTPA by engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce," including, among other things, by "fail[ing] to maintain adequate computer systems and data security practices to safeguard Personal Information" and "fail[ing] to disclose that its computer systems and data security practices were inadequate to safeguard Personal Information from theft."  [*Id.* at ¶ 217.]  Plaintiff also claims that TGH's "unfair or deceptive acts or practices" include, among other things, "[m]isrepresenting that it would protect the privacy and confidentiality of Plaintiff and class members' Personal Information, including by implementing and maintaining reasonable security measures"; "[o]mitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and class members' Personal Information"; and "[o]mitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff

and class members' Personal Information," including duties imposed by the FTC Act and HIPAA. [*Id.* at ¶ 218.] As a result of TGH's "unfair methods of competition and unfair or deceptive acts or practices," Plaintiff claims he and the class have been harmed, [*see id.* at ¶ 223], and therefore request damages in the form of injunctive relief, attorneys' fees and costs, and "any other just and proper relief," [*id.* at 224].

45.     Plaintiff's Complaint again contains no allegations that would support or suggest the amount in "damages" he or any member of the Class allegedly sustained as a result of Defendant's alleged violation of the FDUTPA. Therefore, Defendant does not include in the calculation of the total amount in controversy any alleged violation-of-FDUTPA damages. However, the FDUTPA allows private parties to recover "actual damages, attorney's fees, and court costs," *N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing Fla. Stat. § 501.211(2)), all relief which Plaintiff seeks. Accordingly, when these damages—permitted and recoverable under law—are combined with the cost of just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the putative class, in addition to the other damages Plaintiff claims he and the Class have suffered, the amount in controversy further exceeds CAFA's $5,000,000 threshold. *See, e.g., Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1237 (S.D. Fla. 2011) (CAFA amount-in-controversy

requirement met and evident on face of plaintiff's complaint when plaintiff asserted FDUTPA claim involving "at least hundreds of thousands of persons").

46.     Total Amount in Controversy.  According to the discussion above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the class exceeds the $5,000,000 CAFA threshold.   Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, injunctive or declaratory relief, or attorneys' fees, which, as discussed below, add even more to the total amount in controversy.

47.     Prayer for Other Monetary and Injunctive Relief and Other Claims. In addition to the claims and damages discussed above, Plaintiff also states claims for unjust enrichment, [Compl., ¶¶ 195–200], for which he claims that TGH "should be compelled to provide for the benefit of Plaintiff and class members all unlawful proceeds received by it as a result of the conduct and Data [Incident] alleged [in the Complaint]," [id. at ¶ 200], and declaratory and injunctive relief, including, injunctive relief requiring Defendant to implement and maintain reasonable security measures, including, but not limited to, the following:

- "[o]rdering that Defendant engage internal security personnel to conduct testing, including audits on Defendant's systems, on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors";

- "[o]rdering that Defendant audit, test, and train its security personnel and employee regarding any new or modified data security policies and procedures";

- "[o]rdering that Defendant conduct regular database scanning and security checks"; and

- "[o]rdering that Defendant routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, patient personally identifiable information and patient protected health information,"

[*id.* at ¶ 213].

48.     In certain circumstances, where the value of declaratory or injunctive relief is not too speculative, the value can be considered when determining the amount in controversy. *See Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013). The value of declaratory or injunctive relief is based upon the "value of the object of the litigation." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted). Courts in the Eleventh Circuit consider the "value of the object of the litigation" from the plaintiff's perspective, *i.e.*, "the monetary value of the benefit that would flow to the plaintiff if the relief [she was seeking] were granted." *Id.* at 1316 (citation omitted). And under CAFA, courts "aggregate the claims of the individual class members and consider the monetary value that would flow to the entire class if the declaratory [or injunctive] relief were granted." *Id.*

49.     Here, however, no allegations in the Complaint allow Defendants to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, TGH has not included that value in the calculation of the total amount in controversy. Nevertheless, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## ATTORNEYS' FEES

50.     When underlying substantive law provides for an award of attorneys' fees, a party may include a "reasonable amount" in its calculation in the amount in controversy. *McLawhorn v. GEICO Indem. Co.*, Case No. 8:17–cv–156–T–33AEP, 2017 WL 1277744, at *5 (M.D. Fla. Apr. 6, 2017) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).   Here, Plaintiff's FDUTPA claim provides for the award of attorneys' fees to the prevailing party, and such fees are available under FDUTPA in calculating the amount in controversy. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014) ("[T]he Court may consider attorney's fees and costs available under FDUTPA in calculating the amount in controversy[.]") (citing *McKinnon Motors, LLC*, 329 F.3d at 808 n. 5).

51.     Although only "attorneys' fees incurred up to the time of removal may be included in the amount in controversy" calculation, *McLawhorn*, 2017 WL 1277744, at *5, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## NOTICE

52.        As required by 28 U.S.C. § 1446(d), TGH is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital removes the State Court Action from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to U.S. District Court for the Middle District of Florida.

DATED:  August 21, 2023                Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*

     Julie Singer Brady
     Florida Bar No. 389315
     Email:   *jsingerbrady@bakerlaw.com*
     200 South Orange Avenue, Suite 2300
     Orlando, FL 32801
     Telephone: 407.649.4000
     Facsimile: 407.841.0168

Casie D. Collignon (*pro hac vice forthcoming*)
Sarah A. Ballard (*pro hac vice forthcoming*)
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed and served through the Court's ECF system on this 21st day of August, 2023, on all counsel of record.

*/s/ Julie Singer Brady*
Julie Singer Brady